# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION AT CHATTANOOGA

| | |
|---|---|
| SAAHIL KAPOOR, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RHEA COUNTY, TENNESSEE; RHEA )<br>COUNTY SHERIFF'S DEPARTMENT; RHEA )<br>COUNTY SHERIFF MIKE NEAL, THREE )<br>JOHN DOE JAILERS WORKING THE NIGHT )<br>SHIFT OF APRIL 30 - MAY 1, 2021; & TWO )<br>JOHN/JANE DOE JAILERS WORKING THE )<br>DAY SHIFT OF MAY 1, 2021, )<br>)<br>Defendants. ) | Case No. _____<br>JURY DEMANDED |

## COMPLAINT

Plaintiff, Saahil Kapoor, through counsel, and for cause of action against these Defendants, respectfully states as follows:

## INTRODUCTION

This is a civil rights, personal injury, and common law tort action arising from the acts and omissions, policies, practices, and culture of Rhea County, Tennessee; the Rhea County Sheriff's Department; Rhea County Sheriff Mike Neal; three Rhea County jailers working the overnight shift of April 30 to May 1, 2021, and two Rhea County jailers working the day shift of May 1, 2021 ("collectively "Defendants").

Mr. Kapoor is a 23-year-old citizen of the United Kingdom of Great Britain who holds an F-1 Student Visa, and is enrolled as a student at Bryan College in Dayton, Rhea County, Tennessee, where he is also a member of the soccer team. Mr. Kapoor's ethnic heritage is Indian.

On the night of April 30 - May 1, 2021, Mr. Kapoor attended a "house party" at 275 Ballard Street in Dayton, Tennessee. This party was attended by other Bryan College athletes and their friends. Mr. Kapoor was accompanied at the party by his girlfriend, Jennifer Haggard.

Shortly after 2:00 a.m., May 1, 2021, Mr. Kapoor and 19-year-old Jordan Urbistondo became engaged in a verbal disagreement. There was never any physical contact during this argument.

A 911 call was placed. The caller never responded to the 911 operator, but the phone line remained open for more than ten (10) minutes. Police were dispatched, but the argument had already ended before police arrived.

Upon arriving at the party, the officers took Mr. Kapoor around the side of the house, out of view of the other party-goers, and administered some non-standard field sobriety tests, after which Mr. Kapoor was arrested for public intoxication. Mr. Kapoor was not given a breathalyzer test nor was a blood draw performed on Mr. Kapoor after his arrest. Mr. Kapoor admits to having had two (2) to three (3) drinks that night, upon information and belief, Mr. Kapoor was not intoxicated.

Mr. Kapoor was transported to the Rhea County Jail and booked. Mr. Kapoor was on private property the entire night and had received permission from the occupants of the residence to stay the night if he chose. The charge of public intoxication was ultimately dismissed entirely and without terms.

Mr. Kapoor is a life-long asthmatic and is prescribed two medications, delivered by inhaler, to treat his condition. Mr. Kapoor is prescribed two "puffs" of Symbicort, a steroid, every morning, and Ventolin as needed to relieve active asthma attacks. Mr. Kapoor's Ventolin prescription directs him to take two puffs at the outset of an attack, and continue to take two puffs at a time until the attack subsides, up to a total of ten puffs per attack. Stress can trigger an attack of Mr. Kapoor's asthma. Because of the severity of Mr. Kapoor's asthma, he keeps several inhalers handy at all times, at home, in his vehicles, and in the bag or backpack that he carries with him. At the time of his arrest, Mr. Kapoor's bag, with an inhaler in it, was inside the house. Mr. Kapoor had another inhaler in the vehicle he and Ms. Haggard had driven to the party.

At the Rhea County Jail, Mr. Kapoor was put into a holding cell or "drunk tank" with four or five other men. Approximately one hour after being confined, Mr. Kapoor began to experience an asthma attack. Mr. Kapoor experienced uncontrollable coughing and terrifying shortness of breath. Mr. Kapoor's pleas for assistance were ignored for some time, and when jailers did finally come into the cell, they accused Mr. Kapoor of faking his distress. The jailers told Mr. Kapoor if he continued to cough and plead for assistance and for his inhaler, he would be moved to the "psych ward" and he would not receive credit for the time he spent there. Mr. Kapoor was put into a

wheelchair. The jailers were mocking Mr. Kapoor as he struggled to breathe and continued to cough uncontrollably. One jailer was "popping wheelies" with Mr. Kapoor's wheelchair while continuing to assert that Mr. Kapoor did not need his inhaler.

Mr. Kapoor had several friends, including Ms. Haggard, waiting at the jail for his release. When jailers finally checked Mr. Kapoor's heartrate and blood oxygen saturation, it was found that Mr. Kapoor's heartrate was above 140 beats per minute. Mr. Kapoor does not remember the reading for his blood oxygen saturation at that time. When jailers saw these readings, one of them went to Ms. Haggard and reportedly said, "Go get this boy's f***ing inhaler!" When Ms. Haggard asked what was wrong, she was told that nothing was wrong and that Mr. Kapoor was fine.

Mr. Kapoor was allowed to use his inhaler briefly, then the inhaler was taken away from him and he was returned to the holding cell. Mr. Kapoor was told that he could use the inhaler again if needed. However, once inside the holding cell, Mr. Kapoor began to suffer a second severe asthma attack. He was again on the floor of the cell coughing uncontrollably, with burning lungs and a terrifying sensation of suffocation. Jailers again ignored Mr. Kapoor's repeated pleas for assistance for some time while watching and listening to him suffer through the audio and video feed from the holding cell. At the time of the second attack, Mr. Urbistondo was being booked by one of the jailers and could see and hear Mr. Kapoor on the video monitor pleading, "I can't breathe! I can't breathe! I need my inhaler!"

As a result of the acts and omissions, policies, practices, and culture of the Defendants acting under color of law, Mr. Kapoor was left to suffer unnecessary pain and suffocation when the jailers could have easily provided the prescribed inhaler to relieve Mr. Kapoor's agony. Because Mr. Kapoor was being held as a prisoner at the Rhea County Jail, Mr. Kapoor had a special relationship with his jailers which created a duty for the jailers to rescue or render aid to Mr. Kapoor.

Mr. Kapoor's claims under 42 U.S.C. § 1983 and state law arise, among other things, from the Defendants' violation of Mr. Kapoor's clearly established rights guaranteed to him under the Fourteenth Amendment to the United States Constitution, Article I, §§ 13 and 16 of the Tennessee Constitution.

## I. PARTIES

1. Plaintiff, Saahil Kapoor, is a citizen of the United Kingdom of Great Britain, legally in the United States and the State of Tennessee at all times relevant to this Complaint by virtue of a valid F-1 student visa. Mr. Kapoor is a person according to the meaning of the United States Constitution and, as such, enjoys the rights protected by 42 U.S.C. § 1983.

2. The Plaintiff sues the Defendants for all damages recoverable under state and federal law.

3. Defendant Rhea County, Tennessee, is responsible for the conditions in the Rhea County Jail and for the humane treatment of the prisoners held there.

4. Defendant Rhea County Sheriff Mike Neal is the elected sheriff of Rhea County, and was at all times relevant to this Complaint. As head of the Rhea County

Sheriff's Department, Defendant Neal is the chief law enforcement deputy for Rhea County. Defendant Neal is responsible for the establishment of the policies and customs of the Rhea County Sheriff's Department. Further, as sheriff, Defendant Neal is responsible for the hiring, training, supervision, and discipline of the deputies, jailers, employees, agents, and contractors of the Rhea County Sheriff's Department. Defendant Neal is under a constitutional and statutory duty to run the Rhea County Jail in a lawful manner and to preserve the rights, privileges and immunities guaranteed and secured by the constitutions and laws of the United States and Tennessee. At all times material hereto, Defendant Neal was acting under color of law. Defendant Neal is sued individually and in his official capacity as Rhea County Sheriff.

5. Defendants Three Night Shift Jailers were, at all times relevant, responsible for preserving the rights, privileges, and immunities guaranteed and secured to citizens by the constitutions and laws of the United States and the State of Tennessee and were acting under color of law within the course and scope of their employment. Defendants Three Night Shift Jailers are sued individually and in their official capacity.

6. Defendants Two Day Shift Jailers were, at all times relevant responsible for preserving the rights, privileges, and immunities guaranteed and secured to citizens by the constitutions and laws of the United States and the State of Tennessee and were acting under color of law within the course and scope of their employment. Defendants Two Day Shift Jailers are sued individually and in their official capacity.

6

## II. JURISDICTION AND VENUE

7. This cause of action arises out of a series of events, all of which occurred in Rhea County, Tennessee.

8. Venue lies with this Court pursuant to 28 U.S.C. § 1391, as all the acts or omissions which give rise to this cause of action occurred within this district, and based on information and belief, all of the Defendants are residents of and/or conduct business in this district. Jurisdiction lies with this Court pursuant to federal question jurisdiction, 28 U.S.C. §§ 1331 and 1343, based on the claims brought under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and the Fourteenth Amendment of the Constitution to the United States of America. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.

9. Each and every act of Defendant governmental entities and law enforcement agencies was performed under the color of state law and by virtue of the constitutions, statutes, ordinances, regulations, customs and usages of the United States of America, the State of Tennessee, the County of Sullivan, and under the authority of their positions as law enforcement deputies for such state and county.

10. All the wrongs complained of herein occurred within this jurisdiction and within the applicable statute of limitations governing this action and this Court has jurisdiction.

## III. FACTUAL BACKGROUND

11. On the night of April 30, 2021, Mr. Saahil Kapoor, 23, attended a party at a residence located at 275 Ballard Street, Dayton, Tennessee.

12. Mr. Kapoor was accompanied by his girlfriend, Jennifer Haggard.

13. Shortly after 2 a.m. on May 1, 2021, Mr. Kapoor and Mr. Jordan Urbistondo, 19, became engaged in an argument.

14. Someone in close proximity to the argument placed a call to 911.

15. The caller did not converse with the 911 operator.

16. The line remained open for more than ten (10) minutes.

17. The operator was able to hear portions of the conversation between Mr. Kapoor and Mr. Urbistondo.

18. Officers of the Dayton Police Department were dispatched to the Ballard Street location.

19. There was never any physical contact between Mr. Kapoor and Mr. Urbistondo.

20. Upon arriving at the residence, officers decided to charge Mr. Kapoor with public intoxication.

21. Upon information and belief, Mr. Kapoor was not intoxicated.

22. Upon information and belief, Mr. Kapoor had not left the property of the private residence since the time he arrived for the party.

23. Upon information and belief, Mr. Kapoor had been granted permission from those residing there to spend the night if he chose.

24. Mr. Kapoor was taken into custody and transported to the Rhea County Jail.

25. The charge of public intoxication against Mr. Kapoor was ultimately dismissed without terms.

26. Mr. Kapoor is a life-long severe asthmatic who is prescribed two types of medicine, both administered by inhaler. Mr. Kapoor takes the medication Symbicort, a steroid, daily. Mr. Kapoor takes the medication Ventolin as needed when he suffers from an asthma attack. Mr. Kapoor's prescription directs him to take two (2) "puffs" of Ventolin at the onset of an asthma attack, and take two (2) more puffs as needed until the attack subsides, up to a total of ten (10) puffs during each attack. Because of the severity of Mr. Kapoor's asthma, he keeps multiple Ventolin inhalers around him – at his residence, in his vehicles, and in a bag of personal effects which he carries with him. Mental and emotional stress are known triggers of Mr. Kapoor's asthma attacks. At the time of his arrest, Mr. Kapoor was separated from his bag containing an inhaler, which was inside the house, and was separated from the inhaler which was in the vehicle Mr. Kapoor and Ms. Haggard drove to the party.

27. Ms. Haggard retrieved Mr. Kapoor's inhaler and followed him to the Rhea County Jail.

28. At the Rhea County Jail, Mr. Kapoor was placed in a holding cell or drunk-tank with four (4) or five (5) other men. Mr. Kapoor did not have access to his inhaler.

29. Mr. Kapoor was not evaluated for medical conditions before he was locked in the cell.

30. Approximately one (1) hour after being placed in the holding cell, Mr. Kapoor began to suffer his first severe asthma attack at the Rhea County Jail.

31. Jailers at the Rhea County Jail have the ability to see and hear what happens inside the holding cell via closed-circuit audio and video equipment.

32. During Mr. Kapoor's first severe asthma attack, he was coughing uncontrollably, suffering from a severe burning sensation in his chest and lungs, and experiencing the sensation of suffocation.

33. Mr. Kapoor was on the floor of the holding cell saying "I can't breathe! I can't breathe! I need my inhaler!"

34. Mr. Kapoor was pounding his chest with his fist in attempts to get air into his lungs.

35. The jailers were able to see and hear Mr. Kapoor's obvious distress via the closed-circuit audio and visual system.

36. Jailers allowed Mr. Kapoor to continue to suffer the agonizing effects of a severe asthma attack, including suffocation, without immediately taking any action to render aid to him or rescue him.

37. The special relationship between jailers and prisoners is well-recognized as one that gives rise to a duty to rescue or render aid.

38. Jailers have a duty to provide appropriate medical care to a prisoner suffering from an obvious serious medical condition.

39. When jailers finally opened the holding cell in response to Mr. Kapoor's pleas for assistance, they mocked Mr. Kapoor and told him that if he did not cease "faking" this condition, he would be placed in the psych ward and his time there would not count toward his release.

40. Mr. Kapoor was picked up from the ground and placed in a wheelchair.

41. While in the wheelchair, the jailers continued to mock Mr. Kapoor and threaten him with negative consequences if he did not stop complaining.

42. One of the jailers was pushing Mr. Kapoor's wheelchair around in the corridor and attempting to "pop wheelies" with Mr. Kapoor's wheelchair while continuing to taunt him about faking his distress.

43. When Mr. Kapoor continued to plead for his inhaler and complain that he could not breathe, jailers finally decided to check Mr. Kapoor's heartrate and blood oxygen saturation levels.

44. This was the first medical evaluation of any kind received by Mr. Kapoor.

45. Upon information and belief, Mr. Kapoor's heartrate was over 140 beats per minute.

46. Mr. Kapoor does not recall his blood oxygen saturation level at that time.

47. On information and belief, upon seeing these readings, the jailers went to Ms. Haggard in the waiting area and directed her to "Go get this boy's f***ing inhaler!"

48. On information and belief, when Ms. Haggard asked if something was wrong, the jailers replied that there was nothing wrong.

49. Mr. Kapoor was allowed limited use of his inhaler, enough to reduce the immediate distress, but not enough to end the asthma attack.

50. Mr. Kapoor was then put back into the holding cell without his inhaler.

51. Jailers told Mr. Kapoor that he could use the inhaler again if needed, even though Mr. Kapoor's need for the inhaler had not passed.

52. Shortly after being placed back in the holding cell, Mr. Kapoor began to suffer a second severe asthma attack with uncontrollable coughing, burning lungs, and the terrifying sensation of suffocation.

53. Upon information and belief, Mr. Urbistondo was being booked by one of the three jailers on duty while Mr. Kapoor was suffering his second severe asthma attack and could see and hear Mr. Kapoor's agonizing pleas for breath and his inhaler.

54. During Mr. Kapoor's second asthma attack, upon information and belief, two jailers were booking other prisoners and one was doing paperwork at his or her desk, while all three jailers ignored the video and audio feed from the holding cell where Mr. Kapoor was struggling to breathe.

55. At the time of Mr. Kapoor's second asthma attack, the jailers had Mr. Kapoor's inhaler in their possession and could have relieved his distress at any time by giving Mr. Kapoor access to his inhaler.

56. After allowing Mr. Kapoor to suffer needlessly for several minutes, jailers finally again gave Mr. Kapoor limited access to his inhaler and again took it away from him and locked him in the holding cell.

57. Day shift jailers came on duty before Mr. Kapoor was released from the Rhea County Jail.

58. On information and belief, when Mr. Kapoor requested his inhaler from a female jailer on day shift, she refused to give him access to it saying that it would cause his body to go into shock.

59. Mr. Kapoor was not able to freely access his inhaler and fully recover from this night of severe asthma attacks and the terrifying sensation of suffocation until after he was released from the Rhea County Jail.

60. The United States Court of Appeals for the Sixth Circuit has held that pretrial detainees have a Substantive Due Process right to medical treatment for serious medical needs under the Fourteenth Amendment to the United States Constitution. *Phillips v. Roane County, Tenn.*, 534 F.3d 531 (6th Cir. 2008).

61. The Tennessee Constitution, Article I, § 13 states: "That no person arrested and confined in jail shall be treated with unnecessary rigor."

62. The Tennessee Constitution, Article I, § 16 states: "That excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

63. Tennessee Code Annotated § 41-2-109, in relevant part, provides that:

It is the duty of the superintendent [of the county jail or workhouse] to:

(3) See that they [prisoners or detainees] are kindly and humanely treated, and properly provided with clothing, wholesome food properly cooked and prepared for eating three (3) times a day when at work;
. . .
(5) See that when sick they have proper medicine and medical treatment, and, in case of death, are decently buried;
. . .

64. Mr. Kapoor's suffered from severe asthma attacks that caused him to cough uncontrollably, plead to the jailers that he could not breathe, and beg for access to his prescribed medication, his inhaler, from approximately one hour after his arrest until his release the next morning.

## IV. CAUSES OF ACTION AGAINST DEFENDANTS

### A. 42 U.S.C.A. § 1983 VIOLATIONS

#### 1. RHEA COUNTY'S FAILURE TO ADEQUATELY TRAIN, SUPERVISE, CONTROL, AND DISCIPLINE JAILERS

65. Plaintiff hereby incorporates, in its entirety, each and every paragraph contained in this Complaint by reference as if fully set forth herein.

66. As the chief law enforcement deputy of Rhea County and the superintendent of the Rhea County Jail, Sheriff Neal is responsible for the hiring, training, supervision, control, and discipline of the jailers employed at the Rhea County Jail.

67. The jailers' denial of Mr. Kapoor's prescribed medication during severe asthma attacks is *prima facie* evidence that Rhea County's training program for jailers was inadequate to train jailers to appropriately care for prisoners suffering from a serious medical condition.

68. The jailers' denial of Mr. Kapoor's prescribed medication during severe asthma attacks is *prima facie* evidence that Rhea County failed to adequately supervise jailers to ensure that serious medical needs of prisoners are appropriately addressed.

69. Rhea County's failure to adequately train jailers regarding serious medical conditions of prisoners amounted to deliberate indifference to the fact that inaction would obviously result in the violation of Mr. Kapoor's right to appropriate medical care for a serious medical condition.

70. Rhea County's failure to adequately supervise jailers regarding the provision of appropriate medical care for the serious medical conditions of prisoners

amounted to deliberate indifference to the fact that inaction would obviously result in the violation of Mr. Kapoor's right to appropriate medical care for a serious medical condition.

71. Rhea County's failure to adequately train, supervise, control, and discipline jailers regarding the appropriate medical care for the serious medical conditions of prisoners proximately caused the violation of Mr. Kapoor's right to appropriate medical care for a serious medical condition.

### 2. JAILERS' VIOLATION OF MR. KAPOOR'S RIGHT TO MEDICAL CARE FOR A SERIOUS MEDICAL NEED

72. Plaintiff hereby incorporates, in its entirety, each and every paragraph contained in this Complaint by reference as if fully set forth herein.

73. Mr. Kapoor has a serious medical need in that he suffers from severe asthma attacks which require that he have continuous access to the prescribed medication that allows him to breathe during such attacks.

74. Mr. Kapoor suffered severe asthma attacks while confined in the Rhea County Jail.

75. The jailers on duty at the Rhea County Jail while Mr. Kapoor was confined there were aware of Mr. Kapoor's obvious serious medical need.

76. When the jailers on duty during Mr. Kapoor's confinement allowed him to needlessly suffer, struggle to breathe, and prolonged the time that Mr. Kapoor experienced terrifying suffocation due to the unnecessary constriction of his airways, the jailers exhibited deliberate indifference to Mr. Kapoor's serious medical condition.

77. The deliberate indifference of the Rhea County jailers on duty during Mr. Kapoor's confinement proximately caused Mr. Kapoor to suffer what amounted to an hours-long period of suffocation, observing his contortions of agony and his pleas for breath while the jailers literally held the cure in their hands and denied Mr. Kapoor access to his prescribed medication.

**B.  JAILERS' BREACH OF THE DUTY TO RESCUE**

78. Plaintiff hereby incorporates, in its entirety, each and every paragraph contained in this Complaint by reference as if fully set forth herein.

79. It is well-established that special relationships can give rise to a duty to rescue or render aid.

80. The relationship between legal custodian and his charge, such as a jailer and his prisoner, is one of the special relationships that give rise to a duty to rescue or render aid.

81. It was obvious to the Rhea County jailers on duty during Mr. Kapoor's confinement that Mr. Kapoor was suffering a severe asthma attack and could not breathe.

82. Even though Rhea County jailers knew of Mr. Kapoor's distress, and knew that his inhaler would relieve that distress, the jailers denied Mr. Kapoor access to his prescribed medication.

83. Rhea County jailers breached their duty to render aid to Mr. Kapoor when they allowed him to suffer an hours-long asthma attack without giving him access to his medication.

16

84. The breach of their duty to Mr. Kapoor resulted in Mr. Kapoor suffering needlessly from hours of agony and suffocation while Rhea County jailers held the cure in their hands and denied Mr. Kapoor access to his prescribed medication.

## V. DAMAGES

85. As a result of the aforementioned acts and omissions in violation of the laws of the State of Tennessee and the Tennessee Constitution and the Constitution of the United States on the part of Defendants, the same being a direct and proximate cause, Mr. Kapoor seeks recovery from the Defendants in the amount of not less than Five Hundred Thousand Dollars ($500,000.00) for damages, including, but not limited to the following:

    a. Physical pain and suffering;

    b. Emotional pain and suffering;

    c. Attorney fees;

    d. Punitive damages;

    e. All such further relief, general and specific, to which Mr. Kapoor may be entitled under the facts and circumstances herein.

86. As a direct and proximate result of the aforementioned acts and omissions of Defendants, Mr. Kapoor has been injured.

## VI. PRAYERS FOR RELIEF

WHEREFORE, PREMISES CONSIDERED:

Mr. Kapoor sues Defendants, jointly and severally, in their official and individual capacities, and prays for a judgment against the Defendants for damages in the

maximum amount allowed by law, as well as all discretionary costs, post-judgment interest, and for all such further relief, both general and specific, to which Mr. Kapoor may be entitled. Mr. Kapoor also seeks injunctive relief and asks that this Court order changes to Rhea County's blanket policy of denying detainees access to prescribed medication.

Respectfully submitted this 28th day of January, 2022.

*/s/ Nathaniel H. Evans*
NATHANIEL H. EVANS (BPR # 026292)
THE EVANS LAW FIRM
625 Market St., Suite 404
Knoxville, TN 37902
(865) 523-2755
nate@evanslawfirm.law